May it please the court, my name is Michael Jacks. I'm here on behalf of the appellant and plaintiff below, Redstone International, Inc. And this is a case about access to justice, and we're appealing a summary judgment order that granted a summary judgment in favor of the defendant, the insurance market. And although Liberty Mutual is on the caption, they're not a party to this appeal, it's a separate order that was not appealed with them and is silent with them. Can you talk just a little louder? Sure. Yeah, great. I think it's me, not you. So, Redstone is a small construction company from southwestern Pennsylvania. And in 2014, they were awarded a large construction project in western Pennsylvania. Can I go back to something that you alluded to earlier, which is that earlier on there was another defendant who was still in the case at the time the order you're appealing from was entered. Do you agree that at the time summary judgment was granted between these two parties, there was no final appealable order? Because at that point, Liberty Mutual was still a defendant, right? So, what I did, Judge, is I believe the orders were 12 days apart. I believe it was October 20th of 2020 that the order for the insurance market was entered. Right. And November 2nd, I guess maybe 13 days apart, that the order for Liberty Mutual was entered. Right. So, I followed the 30-day notice of appeal window based on the 20th, just because I was trying to be sure. And essentially what happened with Liberty Mutual is they tendered a defense on the underlying action. This is an insurance dispute. And they paid through trial. We actually finished trial on the underlying action. I think it was October 17th of 2020. Sure. And they had a poison pill provision. Right. But just as a procedural matter, if there are two defendants, the district court grants summary judgment to defendant one, but has not yet resolved anything against defendant two. Defendant two is still in the case, I think, as a matter of just, you know, maybe we can fix this problem. But at that point, there is no final appealable order under 1291, right, when one of the defendants is still in the case. Your Honor, I think if Liberty Mutual had not been granted final summary judgment, I believe both orders state that they are final and appealable. But a district court can't turn an order that's not final and appealable into an order that's final. Well, I mean, it can, but there's a procedure for that. It's called Rule 54B. But, I mean, normally speaking, again, just there are two defendants to an action. District court grants summary judgment to defendant one. During the time the action is still proceeding against defendant two, there is no final appealable order, right? I agree with you. And you would have to, assuming defendant two went through trial, you would then, if you wanted to appeal the summary judgment to the first defendant, you would do it after. And I'm like, well, you'd have to seek Rule 54B certification. You could also try that. So my understanding is that in this case, the notice of appeal was filed during the window where defendant one had been granted summary judgment, but defendant two was still a defendant? I don't believe that's correct, Your Honor. I would love to be wrong about that, and I may be. I'll check. I think I did it right at the 30-day window. So I think I filed the notice of appeal right about November 20th of 2020. So that would have been 18 days after summary judgment had been granted to Liberty Mutual. And that's all in the schedule and joint appendix. So to revert back, I do believe this is a final appealable order. Certainly my client would be left without any recourse whatsoever without pursuing this appeal. And again, Redstone was awarded a $6.5 million construction contract. It's quite a detailed contract. It's the largest contract they'd ever had in company history. Wait, can I go back? I'm reviewing some notes I have. It appears to me that when you filed the notice of appeal, there were still two counterclaims that Liberty Mutual had pending. Is that correct? No, because we settled with Liberty Mutual. So that way there's a settlement agreement. The dispose of the claims and the counterclaims? Correct. That would be amazingly great if true. So I will check that. It is true. And again, they essentially had a clawback poison pill provision in the policy. So they tendered a defense in two separate actions, a state court action and a federal court action. That had seven figures. I mean, it was an expensive case. There were three experts and two law firms involved in multiple cases. And the way their policy was written, if they won on the denial of coverage, they could get that money back. And Redstone simply didn't have it. So we negotiated a settlement where I agreed not to appeal the order as to them, and they agreed not to seek reimbursement of that money. But that's why they're not a party to this appeal. And so what this is about, and I think it's really the heart of it, is how complex the dispute is between the insurance market, who was Redstone's insurance agent, and Redstone. And what Redstone did was get this complex contract with specific insurance provisions, and they're all cited in my brief. I'm not going to read them back to you, but they involve performance of the work, coverage, and contractual liability. Mr. Jackson, can you help me out? Because what actual term of the contract do you allege was violated? Because I confess that having read the papers, I'm not entirely sure. The language that was violated is X, in terms of the contract issue. In terms of the – so the billing contract required insurance. Yep. Redstone reached out, provided a copy of the entire contract. But that's not a contract between – the insurance market is not a party to that contract. What provision of a contract with the insurance company do you allege was violated? They said – Redstone said, we want to buy insurance for this contract. We have to have insurance under this contract. It's very specific what we have to have, and it was not provided. So I've got – what was pled was breach of contract and negligence and the alternative. What Judge Bailey and the district court ended up deciding was he looked at some West Virginia case law against attorneys and malpractice claims, and he said, I'm going to deem your breach of contract claim to be a professional negligence claim, and I'm going to decide that you have to have an expert witness to unveil or unwrap the complexity of the dispute. Didn't you agree with that? I mean, at least on appeal, the lumping of these things together as essential professional negligence claim? Because I want – I can kind of, I think, perceive that if you have a breach of contract case – I'm not sure you do, but let's assume I can conceive a situation where you have a contract with an insurance agency, and you could say, here's my contract. It says one, two, three. You didn't do two. That's not an issue that you have to have an expert necessarily. Yeah, I guess – But just let me – I want to hear your answer. But it seems to me that requires an objection to the lumping of the claims together, and I'm not sure that's before us. In fact, I don't think it is. So I think we're here assuming everything amounts to a professional negligence claim. Now, if I'm wrong about that, please let me know, but that's how I read the brief. Judge, there are cases – I don't remember the name. There's a Seventh Circuit case where they compare the two, and they say essentially the breach would be the same, whether the breach is of negligence or the breach is in contract. But that depends on what the breach is. That's the Judge Hyten's claim. I mean, what's your breach? And if it ends up being, hey, you committed essentially professional negligence, I get it. Maybe it was proper to lump them together. Maybe it's not. Let me give you an example. Say the contract said you will get me an insurance policy whose policy limit is $2 million. And then it turns out that the insurance policy you got me has a policy limit of $2,000. It strikes me as intuitive that I don't need an expert to say that that is a violation of the agreement because the agreement was policy limit of – I can read. I can see that it said $2 million and you got me $2,000. So that seems totally intuitive. You would not need an expert in that situation. But if it says get me insurance that is appropriate to my needs, and I'm not saying that's exactly what it says, but imagine the contract says appropriate to my needs. That's a good analogy, Your Honor. And what happened here, it's not the limits that are in dispute. There's two specific things in the building contract, coverage for your work, effective work, and coverage for contractual liability. And the policy that was sold to my client was a generic CGL policy that excluded your work, that's one of the exclusions, and excluded any liability that my client assumed by contract. So just in the very language of the policy itself, we were done, right? And that's one of the reasons we had this argument in district court level about whether West Virginia law applied or Pennsylvania law. And look, I don't want to put your client in the bad spot because they found themselves in a difficult situation, but of course at one point your client was arguing that the insurance policy that they got actually covered this, right? It's not like it was self-evidently – I mean, your client literally sued someone claiming that the insurance policy they had actually did cover this thing. Correct, and I did it, Your Honor. I'm the one who wrote the complaint. I've been the only attorney who worked on this, and a little bit of a stranger in a strange land down here. You're doing fine. I'm just saying in the 2,000-2,000,000 scenario, I presume you're a lawyer. In the situation where a client realizes, oh, gosh, they were supposed to get me a 2,000,000 policy. They only got me a 2,000,000 policy. You wouldn't even bring a lawsuit against the insurer in that situation. I mean, that would be Rule 11 sanctionable to bring it that way. So I guess, and again, you're doing the best you can for your client, but your own client took the position in litigation that this policy actually covered this. Correct, Your Honor. And is now arguing that it's so obvious that it didn't, you didn't need an insurant, that you didn't need an expert to say that it didn't. That's primarily because of the ultimate choice of law that Judge Bailey made. So in West Virginia, there is case law with contractors and especially with subcontractors, and we argued this. We had the original complaint and a motion to dismiss, amended complaint, and we argued it on a motion to dismiss the amended complaint, which we won. And if you have subcontractors, and there's other several exceptions where these exclusions will not apply in West Virginia. So these exclusions as to your work will not apply even if they're in the policy. Pennsylvania is different. So in Pennsylvania, the occurrence language and the damages language in normal insurance policies are much more strictly construed against construction companies. And to your point about the specificity of our allegations of breach here, whether it's in contract or negligence against the agent, I'm not saying that my contractor client went to an insurance company and just said, hey, give me some kind of policy for my jobs everywhere, right? They came with one specific contract with very specific requirements for insurance. And as so often happens with litigation, we end up dealing with the worst case scenario, right? So we get denied coverage. We lose the trial. There's a $3.3 million judgment. And this isn't in the record because it's happened after, but judgment enforcement collection proceedings are happening right now. So the sheriff of Washington County, Pennsylvania, has levied my client's assets, their equipment. Because of that, their bank has put them into full. I mean, I'm not being dramatic when I say they're teetering on the brink of going out of business imminently, right? And this is their last gasp at trying to get some help. And I think, you know, I know you've had some time in private practice. When you're trying to explain to somebody that drills holes and puts steel and concrete in the holes why they hired an insurance company to get them coverage and they have no coverage, it's very difficult for me to explain to them. They understand it. They would love to get in front of a jury and say, you know, we just got absolutely hosed here, right? We paid for coverage, and it's important. This is all in the record, too. So there was a policy renewal. This job started in 2014. There was a policy renewal in April of 15 when the Liberty Mutual policy was issued. And they went through one broker first, and they said, we're going back to the insurance market. And they had this extensive correspondence where they said, we've had issues on this job. We've had earth movement. That's one of the things that was litigated because there was settlement that caused damage to what was being billed at the job. And they said, we want exclusions removed. They did not get a copy of this policy, even though it was issued as effective of April 15 of 2015. They did not get a copy until June. They already had problems at the job that they got sued for before they got a copy of the policy. So the clients left, and this is more of the reasonable expectations argument that we had at the district court level with Liberty Mutual. That was one of my arguments, Your Honor, as to why there should have been coverage. My client expected coverage because they relied upon an insurance agent who received a copy of this contract, who had had correspondence about issues on this job, and told them twice, here's a certificate of insurance. You've got coverage. You have to provide a certificate of insurance under these contracts. You don't just get to say, trust me, I have insurance. The people you're working for want these certificates. They're identified under the certificates. It's named insurance. So we've just had, it's just been one disaster after another. Can I ask you, you were talking about the choice of law issue, and it sounded like you were talking about differences between West Virginia and Pennsylvania as they relate to coverage law. Correct. And maybe I have missed something here. I thought we were talking about choice of law issues, not about coverage law, but about choice of law in the context of whether expert testimony is required. They are different, and one of my issues with the appeal here, Judge, is that Judge Bailey entered this, again, 12 days before the Liberty Mutual order, and in this one he doesn't say, this order, he doesn't say whether he's picking West Virginia or Pennsylvania law. He relies on cases against attorneys. Sure. But let me just finish my quote, because, I mean, you may be answering it, but I just want to make sure I ask it in a way that gets answered. Because I thought that you argued, hey, Pennsylvania applies, but either way we win, because if it's not that complex, you don't have to have an expert. I didn't know that the issue was, okay, there's different coverage law issues. So I just want to make sure we're looking at it the way we're supposed to. My position for the appeal, Judge, is that Pennsylvania law, it's a complexity analysis. So you can be required to have an expert in Pennsylvania, depending on the complexity of the case. And my view here is that under Rule 56, the facts of that should have been analyzed and viewed in the light most favorable of us.  And I really feel like when you look through this order, the opposite happened. There's this listing of questions on page 68 of this order that Judge Bailey then resolved 12 days later in the Liberty Mutual Order. Okay, but I'm not sure I understand your answer to my colleague's question. In other words, is it crucial to you, for purposes of this issue, does it matter whether Pennsylvania law or West Virginia law applied? It does, because there isn't anything prior to this case in West Virginia with a claim against an insurance broker. There's no precedent for this in West Virginia. If we assume that West Virginia has a, granted, there's not an insurance brokerage case, but it seems like if you go to their general law on professional liability, that it's a pretty close situation that it depends on the complexity. And if we were to analyze West Virginia as saying, look, in professional liability, lots of times you have to have an expert, but it's not absolute and you've got to see how complex it is, isn't that pretty much, you know, it's one hand, half-dozen, another? I suppose it could be, but because Judge Bailey picked expressly Pennsylvania law in the Liberty Mutual Order, I don't think you can have to. But what we're trying to do is to figure out if that makes any difference. I thought you said Pennsylvania law allowed it, but I was, I thought the, okay, go ahead. My understanding of it is, you know, in Pennsylvania there's no bright line requirement that you're absolutely required to have an expert for a case against an insurance broker, and there are Pennsylvania cases addressing claims. Yes, yes, yes. There is no West Virginia case addressing claims against an insurance broker. There's no precedent whatsoever. Right. And I don't see how you can have one state's law apply to one defendant in one order and then another state, and I'm just basing this upon reading his order, right? So Judge Bailey starts out his analysis in the order that's being appealed by discussing these West Virginia malpractice cases against attorneys, and I don't think that the complexity of suing an attorney and whether an attorney has made a mistake during the case is really comparable to this situation. I think this situation is much more simple. So that's the heart of it. I see I have a minute left here on the primary time, and I wanted to mention a couple other issues that I do have in this appeal. One of them is that there's a 2019 case, Trust Guard Insurance v. Collins, from this court, and it was a car wreck case, but it was a declaratory judgment action filed by an insurer trying to get out of coverage on a car wreck case, and this court was very clear, and I think this is an important quote, decisions about indemnity should be postponed until underlying liability has been established. And I think that's what should have happened here, too. I think that it's much easier for a court to look at a judgment and say, here's a policy, here's a judgment, is there coverage, than it is to say we don't know what the judgment's going to be. But I think your time's actually over, not decreasing, not still up. But since you brought that up, I mean, you brought the case, and they're wanting a judgment at the time. They get a defense tender, and then I did file a motion. Look, I'm not criticizing. Look, I mean, practicing law's hard, and I appreciate your predicament. Please don't take this as a criticism. But, yeah, I mean, you initiated the case, and maybe there's even a standing issue about whether you had an injury at that time. But anyway, it seems odd to say I brought the case, and now district court, you need to put it off. Because of Deliberative Mutual, we had a partial settlement. They agreed to tender a defense. So once we got through the motions to dismiss, the defense was being tendered, and what I wanted to do was finish the underlying case. Yeah, I understand. And you're right. I didn't understand the light. No worries. If we just get a chance to go to present it to a jury, I think a jury could understand this, and I think that's the Seventh Amendment, right, constitutional right of a jury. Just let us present the case to a jury, and they can decide whether there was anything that was wrong. Thank you very much. We'll hear from your colleague. May it please the Court. My name is Anthony Cinceri. I'm an attorney with Burns-White, and I practice at the Burns-White Wheeling, West Virginia office. For purposes of the appeal before the Court for consideration this morning, I represent the appellee, the insurance market. Your Honor, for the reasons I set forth in the appellee's brief. Mr. Cinceri, unfortunately, I have gone back and checked, and unfortunately, I think that the appellate jurisdiction issue I flagged with your colleague is, in fact, potentially a problem. So can I first ask you to see if you agree with me on the sequence of events here? Certainly, Your Honor. Okay, so it looks to me that on October 20th, which is docket entry 97, the District Court grants summary judgment to your client, the insurance company. Correct? Correct, Your Honor. Twelve days later, on November 2nd, this is docket entry 98, the District Court grants summary judgment to Liberty Mutual in part, but denies summary judgment to Liberty Mutual in other part. Is that your understanding? That is correct, Your Honor. So at that point, Liberty Mutual is still a party to the litigation with regard to the claims the District Court has not yet resolved, right? That is correct, Your Honor. Okay. 11-20, Timmy files a notice, the insurance market files a notice of appeal. That's docket entry 99. Correct? That's my understanding, yes, Your Honor. And then on January 21st, 2021, Liberty Mutual is dismissed from the case pursuant to an agreement between the plaintiff and them. Is that right? That is my understanding, yes, Your Honor. So my concern is that at the time the notice of appeal was filed in this case, there was no final judgment as to the whole case. Am I wrong about that somehow? Based on that recitation of the procedure history of the case, Your Honor, I would agree with that point that you've made, yes. Okay. I realize I'm springing on this U.N. oral argument, but unfortunately, being an appellate jurisdiction issue, we can't ignore appellate. So if you have any thoughts to that, but I won't put you on the spot because I realize you hadn't briefed it before this. Any thoughts on why that's not a problem? To be frank, Your Honor, I didn't recognize it to be a problem. I didn't take notice of it and was more concerned, to be honest with you, Your Honor, with... Totally understand. ...that had been granted on our part and the clock ticking, so to speak, with regards to the appeal that was filed by the appellant. Okay. I appreciate you helping me clarify that, at least from your perspective, I don't have the docket stuff wrong because I realize I'm raising it. Thank you. So you can go on and proceed to what you were... Thank you. Your Honor, for the reasons I set forth in the appellee's brief, we request that this Honorable Court affirm the order of October 20th of 2020, affirming the motion for summary judgment of the insurance market as to the appellant's claims for negligence, which have been asserted against the insurance market with regards to failure to procure insurance for the project, the Mobley project, as it's referenced in the briefing. And counsel, for the appellant, is correct. This was a complex matter. This was a construction endeavor that was subject to a 44-page contract with 16 discrete subparts thereto. Of those 44 pages, six pages of that contract were dedicated to insurance requirements for this particular project. The appellant, as they suggest, has presented their claims for failure to procure in the context of negligence, breach of contract, and unjust impeachment. But to your point, Justice Cordova, the appellant's claims for negligence, or rather for breach of contract, are no different than their claims. Well, you know, I have questions about whether that's even really before us. I mean, the district court found that. It looks like the parties kind of conceded that and then go down the road of whether or not you have to have an expert in this case or not. So I'm not sure it really is before us. But I think as to how we look at the issue, I mean, it seems odd to me that we would say or would need to say that any claim where professional negligence is involved, you somehow collapse those. I mean, we had an example earlier where we talked about there could be a breach of contract. I mean, if all we had maybe was those September emails, maybe you could say, I got a contract, I got two emails, I got a contract on that. You know, it strikes me that a breach of contract doesn't necessarily, just like a slip and fall, you go to the tort world. I mean, I used to do all that stuff. I mean, if I had a slip and fall case, rarely did you get an expert. If you got a private liability case, you got to get an expert. It kind of depends on what your case is and what you have to do to meet your burden of proof. And if a lay witness can do it, a lay witness can do it. It's less about the nature of the cause of action than the substance. Isn't that right? Correct, John. I wholly agree with that. And with regards to the substance of this action, we aren't dealing with automobile insurance coverage issues. We aren't dealing with homeowner's policies, which your average lay person may have some familiarity and some exposure to in the real world and their year-to-year practice. Rather, we're dealing with commercial insurance in the form of commercial general liability insurance, completed operations coverage, and contractual liability insurance. Let me ask another question. It seems to me the determination of the standard of when you need an expert is a pretty classic legal question. What's the standard? The district court then here lists factors that it sees are sufficiently complex that require an expert. Is that part of the decision? I mean, we're here on summary judgment, so we review it de novo, I guess, but I guess that's what we would do. It just strikes me that kind of looking at the case and saying, all right, it's the sort of thing about whether a witness, a lay witness is competent or not, feels very much like a classic district court discretionary decision. Yeah, not the setting the rule, but I guess it's summary judgment. It just feels like the standard review here feels odd to me in that part of the decision. And that's an excellent point, Your Honor. All your points are excellent. Both West Virginia and Pennsylvania courts recognize that there is no right line rule with regards to the necessity of experts in professional negligence type cases. In fact, I believe that as the Pennsylvania courts have recognized, it's not the nature of the transaction in and of itself, but it's the degree and skill that's required to execute that particular transaction. So simply because this matter involves insurance and oversimplifying this being just a matter of we request this insurance, we didn't get this insurance. Well, I don't believe that that's necessarily the case, and the district court didn't necessarily believe that to be the case because on page 7 of the order granting the insurance market's motion for summary judgment, the court recognizes that it appears that the appellant received the contractual liability insurance coverage as well as the completed operations coverage pursuant to the mobile contract agreement. Additionally, on page 15 of the order of the district court granting Liberty Mutual's motion for summary judgment, the court recognizes that the appellant hasn't presented any evidence demonstrating that they didn't receive the insurance that they should have had or were required to have or could have had pursuant to that mobile contract. Can we take a step back and just, again, I don't know how this, but at a very high level of generality, I think your colleague on the other side makes an interesting, like, a fairly intuitive point, which is to say we are not, we're going to do a construction project. We absolutely need to get insurance against bad things that could happen during this process. I am not an expert. You sort of said that. I'm not an expert in getting insurance contracts, so I need to hire a professional to get me an insurance contract cover against the bad thing. And they went to your client, and your client said, here's what you need. And then the bad thing happened, and then a judge holds that the contract, the insurance that you provided them did not actually cover the very, do you see what I'm saying? There's something about, I go to an expert to ensure that if, I go to an insurance expert to make sure that if the bad thing happens, I'll be protected. And now the bad thing has happened, and now a district court has held they are not protected. I don't know. Why isn't that, I mean, maybe it's a, but there's a certain kind of logic that says the thing they hired you to do is make sure they're covered in the event the bad thing happens. The bad thing happens, they were not covered. Why do I need any more facts to know that you did not do the thing you were supposed to do for them? Well, Your Honor, that's an excellent point. I think it's important to appreciate and recognize why the insurance doesn't provide insurance for the bad things that happen. And as counsel for the appellant recognized, in this particular matter, the district court applied Pennsylvania law to the interpretation of the liberty of mutual policy. And in its application of Pennsylvania law to the liberty of mutual policy, the term occurrence as recognized by- Right, but presumably your client is an insurance expert, so your client should have anticipated, at least I realize things judges do can be hard to predict until they do them, but I mean, I guess the fiction would be part of being an insurance supplier who sells insurance products to people is knowing how courts are likely to interpret those insurance policies. So I don't know how that helps you. Well, because for that to be the case, the standard of care in this matter would have required my clients to be capable of conducting a choice of law analysis and recognize- I imagine that a sophisticated insurance brokerage should probably be able to conduct a choice of law analysis, otherwise I'm terrified about whether they're actually getting me the right coverage. And that's an excellent point as well, but again, that's something, a choice of law analysis is something that the average layperson is most likely incapable of understanding. No, there's all this talk about negligence versus strict liability. I mean, again, it depends on what the contractual duty- I agree with you as a negligence matter, but as a contract matter, I mean, most contract liability is strict liability, right? If I contract to sell you my car, and on the day in question I do not produce my car, and I was like, I'm really sorry, I don't have the car, but I have a really good explanation for why I tried as hard as I could to have the car here today, but I couldn't. In contract, the answer is, sucks to be you. You contracted to supply a car, you did not supply a car, the fact that you tried really hard or you have a really good reason is not a defense to a breach of contract action. And part of the reason for that is because contract actions, like we're not sending you to jail, we're not imposing punitive damages, right? Contracts are just either do the thing you said you would or pay. And so at some level, I think what you're trying to decide is, you said that if something bad happened, you would make sure that someone other than us has to pay for it. And one way you could do it was by procuring an insurance policy, but the other is that if you don't, you have to pay. I guess, again, it's a very simplistic way, but I want to get- it just seems to me very strange that I go to an insurance company to say, make sure I'm protected if the bad thing happens, and then the insurance company doesn't make sure that I'm protected if the bad thing happens, and then further says they don't have to pay me because they failed to make sure the bad thing didn't happen. And that's an excellent point, and I certainly see the point. But so why is it wrong? Well, because, again, I think we're talking about the necessity of an expert in the context of procuring insurance. As to the appellant's- So Judge Qualabong has said, and that's my sense too, which is the question of whether you need an expert depends on how hard the underlying question is. And if I conceptualize the underlying question as, you promised to get me insurance that would cover this, you did not do that. I mean, if that's how you conceptualize the promise, that doesn't strike me as a difficult question. That strikes me as a really easy question. I don't know why you need an expert to say that. Because it's the process of undertaking that exercise of procuring insurance, appreciating what the insurance needs are of the respective client. So let me give you another- let me give you- imagine that the contract- this is weird because I'm not really even sure what the written contract is, but imagine that your contract with them said, we warrant that the insurance we get you will cover if there's a cave-in. And then the insurance that you get does not cover them when there's a cave-in. Would you be liable then? For breach of contract, if the contract says, we warrant that the policy we provided you will cover this. I would concede that in that particular set of circumstances, those set of facts, that hypothetical, yes. Because there is a written agreement. There's a written agreement that expressly identifies the contractual terms. That is not what we have here. There was no written agreement by and between the insurance market and the appellant with regards to securing a particular type of insurance coverage or- Why not? I mean, and you may be right. I mean, it's a weird thing. You got two emails in September. Yeah, here's my contract. Get me insurance. It says something like, I got it, or something like that. Not a lot. And I guess if that's a contract, you know, one way to look at that is, you said you'd get insurance. I need insurance for what this contract says. You know, you would say, I got it. You know, you've provided it. Yeah. Then, I mean, if the story stopped there, you know, maybe that's one thing. Then we got a bunch of emails about two or three months later where there's just back and forth about different things. And, you know, kind of that may be the weakness in the plaintiff's argument, that if it was all one, if it was all, you know, right in September, maybe we could have a simple breach of contract case like Joe's heighten saying. But, you know, back in February or whenever it is that they start having this back and forth, it seems to suggest maybe it wasn't that simple. And there was no one who said, look, you said I have insurance. There seems to be some recognition once we get to there that maybe it's a little bit more complex. And maybe that's a way, maybe that's a reason to lump this stuff together. But, you know, it's just, you know, it is, I mean, normally, and maybe this would go to whether you fulfilled your duties. Normally, you know, instead of sending that email in September, it says I got it, say, hey, let's be careful here. It's not that easy. You know, warn them a little bit that you may not get this sort of coverage. It may be expensive. And maybe that's what all goes into a negligence sort of claim. But, you know, so anyway, it's an odd set of facts. And the September emails, you know, have some appeal to, I think, Redstone's argument. It gets more complicated maybe when it goes later. I agree, Your Honor. I agree. And if I'm recalling correctly, the certificates of insurance that were provided were certificates of insurance for the subject liberty mutual policy, which the district court recognized contained within those liberty mutual policy or that policy was exactly the contractual liability insurance coverage as well as the completed operations coverage. Do you have a position on – and I'm sorry to interrupt you after asking a long-winded question. That's pretty rude. But do you have a position on whether there was a contract and what it was? It's our position that there was no contract, that the plaintiff's claims for contractual liability and breach of contract are nothing more than a recitation or regurgitation of their claims for professional negligence. Your Honors, I think it's compelling in reviewing the district court's order to recognize that the district court not only looked to Pennsylvania law, which the appellant is suggesting to the court should have been applied by the district court in rendering an opinion or ruling on the insurance market motion for summary judgment. It also looked to West Virginia case authority. It also looked to other states' case authority on a particular issue of the necessity of an expert. However, one of the cases that the district court recognizes in the form of a Pennsylvania case is 151 First Associates v. Hofstetler, which is a case involving failure to procure insurance as to a negligence claim being asserted for the state and the requirement of expert testimony being required in that particular matter. I bring that case up because at page 23 of the appellant's brief, the appellant suggested to the court that had the insurance market simply provided modifications to the endorsements to the CGL policy or provided builder's risk insurance coverage, there could have been or should have been insurance coverage available for the indemnity that the appellant seeks for the underlying West Virginia state proceedings. The Pennsylvania court in 151 First Associates specifically recognized that That particular type of insurance requires expert testimony to demonstrate it was a breaching standard of care in procuring that particular type of coverage. So the very type of insurance that the appellant is suggesting could have been procured, which to be honest with you, that's the first that we've heard of that particular type of insurance. Number one, being available to even provide the coverage for the loss that they seek indemnity for the underlying West Virginia state court claim requires expert testimony as recognized by the very court that the appellant is suggesting or requesting this court apply their substantive law in Pennsylvania. With regards to the appellant's assertion that there should have been a stay or that it was premature for the district court to roll on the insurance market's motion for summary judgment based on there having been no determination of liability in the underlying state court proceedings, such was unnecessary. There wasn't any factual predicate or legal issue that was necessary or germane for the district court to have before them to have had determined for purposes of the district court determining and looking at the four corners of the plaintiff's complaint, recognizing what the nature of the issues are with regards to the negligence claim asserted by the plaintiff or the appellant as to the insurance market and whether expert testimony would be required for purposes of the appellant satisfying the prime facial elements for purposes of a negligence claim. So as far as that aspect of the appellant's suggestion that the rolling by the court, the district court, being premature based on there having been no determinative liability in the underlying aspect of the state court proceedings, which the appellant was a party, such is inapplicable here. You don't have to use all your time. I say you don't have to use all your time. If you're done, you can sit down. I appreciate that, Your Honor. Just very quickly, the last form of relief requested by the appellant in their brief is being permitted, if the court finds that expert testimony is necessary, to be permitted to designate an expert at this particular point in time. Well, up to this point in time, the plaintiff or the appellant has vehemently denied that an expert is required, and they certainly haven't showed substantial justification or that the same would be harmless to this particular posture of the case. So with that said, Your Honors, I appreciate your time. We disrespect the request for this court to affirm the district court-ordered grand summary judgment for the insurance market. Thank you very much. I'm going to try to address the points. There are a lot of interesting points that you all just discussed. On the jurisdiction issue, Your Honor, I'm thinking about this like going to court, and I never want to be late for a hearing. So if anything was premature, if I wasn't supposed to file that notice of appeal within 30 days, I'd rather be early than late. I feel like if I'd have waited until February 2021 to file that notice, I would have been in big trouble. These things are very complicated. If there was a concern, I believe it was mooted by the rest of the case promptly resolving without any substantive order by the district court. Again, there were brief settlement negotiations with Liberty Mutual. We did a settlement agreement, and they were dismissed. When you were discussing the complexity or what Timmy could do, so the insurance market is a big company. They have a big office in Maryland. They have a big office in Delaware. I think they're licensed to provide insurance in 15 or 20 different states. That's what they advertise on their website. Mr. Waters, who is the agent in this case, was licensed to provide insurance in both West Virginia and Pennsylvania. So we certainly think they should have been able to look at this and say, either you have this or you don't. And to your point, Judge Guadalobo, about the timing of September. So in September, there was a different policy from a company called Kinsale, which was subject to arbitration, not part of this case. They were in the middle of that policy. So Redstone either had coverage under that policy, or they could have gone out and purchased something else. So the insurance market had the opportunity to review the existing policy and say, either we're going to issue a certificate of insurance, or we're going to tell you, uh-oh, please go buy something. And that's one of the key factual things that there is no written record of here. The insurance market never warned Redstone, you don't have coverage. It never happened, right? Mr. Waters testified in deposition. I warned him, but it was oral. There's no written record of this. There's no reaction to it. Clearly, if a company is in the middle of a $6.5 million job with issues, and they're dealing with the renewal period, and they need a new policy to cover potential issues on this job, tell me. Please tell me I don't have insurance, right? So it's not just could you buy it. If he couldn't find insurance for this, and another important point here on the front page of this contract, the building contract, this is a form contract. This is the American Society of Professional Engineers. There's several other societies of engineers. They do these, they copyright them, they provide them to parties. You can edit them a little bit, but they're done so that contractors and engineers and architects do not have to go out and write these things from scratch. These are normal. This is not some off-the-cuff, back-of-a-napkin insurance provision. These things are used all over the country. There is insurance you can buy for this, and I don't understand why that's even in contention. The other parties in this case had very similar contracts, and they had insurance for this. So on the necessity of the expert issue, when you look at the questions in the October 20th order that we're appealing that Judge Bailey lists on pages 6, 7, and 8, he answers those questions in the Liberty Mutual order on November 2nd, and I think that's appropriate because it's a declaratory judgment action, and he's interpreting a contract under the law. That's what judges do. Experts aren't allowed to do that. Experts don't offer ultimate issue opinions. You don't hire an expert who comes in and says, that's negligence. They can say, here's what they should have done. Maybe they can apply it on standard of care. They don't get to just say, this is the law. The judge does that. Did you or did your client ever ask the district court for the opportunity to designate an expert? No, because discovery closed, and actually we both, so. But like after the district court ruled against you saying that it concluded you needed an expert, did you ask for leave to be permitted to do that? No, because he designated this as a final order and I appealed it, Judge. I mean, it ended the case. So it happened after the close of discovery, and we actually both opposed. We asked for an extension to discovery to do more discovery. Liberty Mutual opposed it. The judge sided with them. That was earlier in the case. And on the contract issue, Judge, I'm not presenting or arguing that there's a specific risk. This is a contract from a course of conduct, and this is not simple negligence where you alluded to slip and falls. I've done a few of those myself. There's never going to be a contract in a slip and fall, right? It's an accident. You're either in a parking lot or in a store, something happens, right? So what happened here, again, one specific job, we need coverage for this job. We're never told they didn't have coverage. Two different policies. The judge decides they don't have coverage. $3.3 million judgment they can't pay, right? That's the straight line, ABC. I think it should be, and I apologize here, I see I'm over. You are over time. But to me, that's something that should not be thrown out of court as a matter of law based on complexity. And thank you, Your Honor. Thank you very much, both of you, for your arguments. You usually come down and shake hands with the lawyers, but you can't do that right now. But perhaps the next time when you're in the Fourth Circuit, we will be able to. This honorable court stands adjourned. Thiney die. God save the United States.
judges: Diana Gribbon Motz, A. Marvin Quattlebaum Jr., Toby J. Heytens